IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| David D. Myers, | Case No. 3:06CV3117 |
| Plaintiff | |
| v. | ORDER |
| Huron County, Ohio, et al., | |
| Defendant | |

This is an employment discrimination case in which the plaintiff brings two federal claims under 42 U.S.C. § 1983 and several state law claims. He initially filed suit in the Huron County, Ohio, Court of Common Pleas. Defendants removed the case to this court.

Pending is the defendants' motion for summary judgment as to all claims. For the reasons that follow, the motion shall be granted as to the federal claims. Exercising my discretion to decline to retain supplemental jurisdiction over state law claims once federal claim are no longer in the case, I shall dismiss those claims, without prejudice.

**Background**

Plaintiff works for the Huron County Engineering Department. On July 19, 2006, he ripped a hole in blue jeans being worn by Casey Masser, a nineteen year old summer employee. At the time, plaintiff, born on November 22, 1959, was forty-six years old. Ms. Masser also reported that

plaintiff, before tearing her clothing, had said that she "shouldn't wear a bra to work since the guys didn't."[1]

After Ms. Masser complained about plaintiff's conduct, a disciplinary hearing was held. That hearing resulted in plaintiff's termination. Grieving that decision through his union, plaintiff was able to have the discipline reduced to time off [about ten months] without pay. He returned to his former position.

Plaintiff's second and third claims assert his only federal causes of action. They are that the: 1) disciplinary action violated his First Amendment rights to free speech, and were in retaliation for his exercise of that right [Doc. 1, ¶¶ 13-16 (Claim Two)]; and 2) defendants have adopted customs, practices and policies that a) contravene the rights of persons protected by anti-discrimination statutes relating to age and disability, and b) retaliate for the exercise of rights protected by the First Amendment.

Defendants' motion, with regard to plaintiff's federal claims, asserts: 1) the statements which plaintiff claims provoked the discipline were not protected speech under the First Amendment and the individual defendants are immune from suit; and 2) plaintiff fails to present any evidence of

---

[1] Plaintiff does not claim that the tearing incident did not occur. Plaintiff asserts, however, that he did not make the bra-wearing statement to Ms. Masser. That does not matter: during the course of the disciplinary proceedings giving rise to this suit, the authorities responsible for imposing the discipline credited her version over his. This court does not revisit the merits of that dispute. *See Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 458 (6th Cir. 1991) ("[I]t is not appropriate for us to second guess the business judgment of employers in personnel matters."). What matters here is that the authorities responsible for the discipline giving rise to this suit credited her account over his, and they had a reasonable basis for doing so. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (**"**In deciding whether an employer reasonably relied on the particularized facts then before it, . . . the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").

adoption or implementation of unlawful customs, practices and policies, such that the County or its supervisory employees could be liable for a violation of plaintiff's federally protected civil rights.

**Discussion**

**1. Retaliation for Exercise of
First Amendment Rights**

In his deposition, plaintiff testified that his exercise of free speech, which he claims led to the discipline, included:

- opposition to an attempt by the County Engineer and the AFSCME union representative to reopen the collective bargaining agreement because plaintiff believed the reason given for re-opening the contract (to create positions that would protect employees who lost their commercial driver's licenses) was false;
- complaining that he was not being paid foreman's wages;
- other unidentified complaints about workplace issues;
- having said things to defendant Essex "many times;"
- failure to receive a $500 reward for reporting who stole some radios from the Engineer's Office; and
- telling Mr. Essex that he had "no integrity" after hiring an individual who was a Democrat.

[Plaintiff's deposition, 96-100].

In an affidavit submitted in conjunction with his opposition to the defendants' motion for summary judgment, the plaintiff asserts:

> I have often spoken out on matters of public concern, including but not limited to the County's *penalizing employees for jury duty and misuse of department funds. I also engaged in the filing of a "class action"* type lawsuit in which Huron County appealed to the Ohio Supreme Court. I also [have] spoken out about *other employees who have engaged in illegal activity* and have helped retrieve merchandise stolen from the Engineer's office. In fact, in or about the summer of 2005 Carl Essex offered a $500.00 reward to whoever could solve a break-in at the office. I solved it and was able to retrieve the stolen property; however, Mr. Essex refused to pay me the reward.

[Doc. 26-2, ¶ 19] [emphasis supplied].[2]

> To prevail on his claim of retaliatory discipline:
>
> First, [plaintiff] must show that, as a matter of law, the speech at issue was protected. To do so, he must demonstrate both that the speech "touches on a matter of public concern" and that "his interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer." [Plaintiff] must next show that his termination by [the police chief] "would chill an ordinary person in the exercise of his First Amendment rights." Finally, he "must present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or dismiss."

---

[2] Defendants assert that the plaintiff's affidavit, to the extent that it is contradicts his deposition testimony, cannot properly be considered. Defendants are correct. *See, e.g., Dotson v. U.S. Postal Service*, 977 F.2d 976, 978 (6th Cir. 1992) (plaintiff cannot submit affidavit contradicting prior testimony); *Kasprzak v. DaimlerChrysler Corp.*, 395 F.Supp.2d 636, 639 n.1 (N.D. Ohio 2005) (Carr, J.). While the affidavit is not, at least technically, inconsistent with or contradictory of plaintiff's deposition testimony, it adds the emphasized new contentions regarding statements which plaintiff alleges provoked retaliatory discipline.

When defense counsel tried during plaintiff's deposition to have him list all such incidents, plaintiff could recall nothing other than those referenced in the deposition. He simply stated, "There may be other things. . . . I just can't think of them now." When then asked, "if you think[] of other things today I want to know about them, okay?," plaintiff agreed to do so. [Plaintiff's deposition, 103-04].

Plaintiff failed, either during the deposition or otherwise prior to the close of discovery, to update his deposition responses with the assertions he now makes in his affidavit about jury duty, misuse of department funds, a class action, and illegal conduct by others.

His failure to do so, aside from failing to abide by a general duty to update discovery responses, violates his obligation under Fed. R. Civ. P. 37(e)(1)(B) to set forth any changes in substance in his deposition testimony. Thus, I agree with the defendants that, to the extent that the plaintiff's affidavit interjects new assertions, those assertions should not be considered in adjudication their motion for summary judgment.

As importantly, plaintiff's introduction of new allegations after the discovery period has closed and only in response to the defendants' motion for summary judgment would, if allowed, necessitate abandoning the previously set timetable for motion practice and jeopardize the trial date. In exercise of my inherent authority to manage my docket and avoid unjustified delay, I decline to consider the newly made assertions.

*Haynes v. City of Circleville*, 474 F.3d 357, 362-363 (6th Cir. 2007) (citations omitted).

Plaintiff's claim fails because nothing he claims having said, despite his self-characterization to the contrary, touched on matters "of public concern." Personal grievances and opinions about workplace conditions are not matters of public concern, and thus, are not protected speech under the First Amendment. *See, e.g., Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988).

The decision in *Rahn v. Drake Center, Inc.*, 31 F.3d 407 (6th Cir. 1994), is instructive and persuasive. In that case the plaintiff claimed that the defendant, a hospital receiving tax funds, had fired her for issuing a press release alleging mismanagement of such dollars, resulting in employee discontent and possible endangerment of patients. The Sixth Circuit held that plaintiff's statements were nothing more than "discontent with new work rules" and an "'example[ ] of the quintessential employee beef: management has acted incompetently.'" *Id*. at 413 (citing *Barnes, supra*, 848 F.2d at 735). *Accord*, *Lewter v. Kannensohn*, 159 Fed. Appx. 641, 646, 2005 WL 3196610, at *4 (6th Cir. Nov. 29, 2005) (unpublished) (finding a government attorney's emails to a judge regarding in-court complaints, were not considered public concern, but rather a "personal beef"); *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004) (finding appellant's letters of complaint to employer were his own "personal beef" and not of public concern); *Jackson v. Leighton*, 168 F.3d 903, 910-11 (6th Cir. 1999) (finding employee's statements opposing merger proposal did not address a matter of public concern and were "an example of the 'quintessential employee beef' of incompetent management").

What plaintiff spoke out about here – even if I take into consideration those utterances that should properly be disregarded due to plaintiff's failure to bring them to the defendants' attention before filing the opposition to the summary judgment motion – is even less of a public concern and interest than speech often found in this Circuit not protected by the First Amendment.

5

I note that, in any event, plaintiff fails to show a nexus between his utterances and termination. For most of the statements there is no temporal relationship between the statements and the date of his termination. This substantially undercuts any suggestion of a connection between what he said and the discipline given after Ms. Masser's complaint about his conduct. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989) (finding no causal connection between plaintiff's letter complaining of discrimination and his demotion where he was not demoted until a month after letter); *Copper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) (finding no causal link between filing of civil rights charge and plaintiff's discharge where discharge was four months after filing of charge).

I conclude, accordingly, that plaintiff cannot prevail on his claim that he was disciplined in retaliation for having exercised his rights under the First Amendment.[3]

## 2. Custom, Policy and Practice Claim

To recover on his claim against the County and its alleged termination of the plaintiff in fulfillment of a policy of discrimination and retaliation, the plaintiff must prove that actions by a governmental employee carried out an unconstitutional policy, ordinance or custom. Respondent superior is not enough to impose liability on the governmental entity. *E.g., Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor – or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Suits against an individual in his official capacity is "no different than a suit

---

[3] There being utterly no merit to plaintiff's First Amendment claim, it is not necessary or desirable that I address the defendants' claim of immunity.

6

against the State itself," and is subject to the same legal analysis. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Under *Monell*, municipal liability may be established by 1) an actual policy or ordinance sanctioned by the municipal body's governing board; 2) an official policy adopted by one with final authority to establish municipal policy; or 3) a municipal custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, *supra*, 426 U.S. at 691. Liability "attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter* in question." *Johnson v. Hardin County*, 908 F.2d 1280, 1286 (6th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Plaintiff has failed utterly to present any evidence to support his contention that, when disciplining him after his actions against Ms. Masser, the defendants were implementing any custom, practice or policy, formal or informal, express or implied, adopted by the County or its officials acting on its behalf. His meritless contentions shall be dismissed.

**Conclusion**

There is no merit to either of plaintiff's federal claims, and defendants' motion for summary judgment as to such claims shall be granted.

The remaining claims are state claims. As noted, I decline to exercise supplemental jurisdiction to adjudicate those claims, which are best left, if plaintiff decides to maintain this litigation – which arises, after all, from his workplace assault and battery on a much younger female – to the court in which plaintiff originally filed them.

It is, therefore,

7

ORDERED THAT:

1. Defendants' motion for summary judgment be, and the same hereby is granted as to plaintiff's federal claims; and

2. Plaintiffs' remaining claims be, and the same hereby are dismissed, without prejudice.

So ordered.

                                                s/James G. Carr
                                                James G. Carr
                                                Chief Judge